LINDLEY, TAX COMMR., APPELLEE, v. FERGUSON, AUDITOR OF STATE, APPELLANT.

(No. 76-1345—Decided November 9, 1977.)

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Patrick V. Kerrigan,* for appellant.

CELEBREZZE, J.   R. C. 115.07 mandates that no money be drawn from the state treasury except on a warrant certified

by the Auditor of State. R. C. 115.35, which sets out the procedure to be followed by the auditor before he issues his warrant on the Treasurer of State, reads as follows:

"The Auditor of State shall examine each voucher presented to him, or claim for salary of an officer or employee of the state, or per diem and transportation of the commands of the national guard, or judgment against the state pursuant to Chapter 2743 of the Revised Code, and if he finds it a valid claim against the state and legally due and that there is money in the state treasury appropriated to pay it, and that all requirements of law have been complied with, he shall issue a warrant on the Treasurer of State for the amount found due, and file and preserve the invoice in his office. He shall draw no warrant on the Treasurer of State for any claim unless he finds it legal and that there is money in the treasury which has been appropriated to pay it."

Appellant stresses the significance of this court's decision in *State, ex rel. Krabach,* v. *Ferguson* (1976), 46 Ohio St. 2d 168, in which paragraph one of the syllabus states:

"The Auditor of State has the authority and duty to investigate or require further proof of a claim presented to him where ample reason exists to question the legality of the claim. (R. C. 115.35 construed.)"

It is appellant's position that, by virtue of the disjunctive language employed in this paragraph, he is empowered to proceed alternatively when examining a voucher presented to him by appellee.

First, appellant states that *Krabach* establishes his prerogative to refuse to issue a warrant until he obtains sufficient information from which to determine the legality of a claim, where ample reason exists to question the legality thereof. Second, appellant claims that his office may employ the power of subpoena, granted in R. C. 117.03, to secure this information, in the course of intermittent investigations into the records, documents and applications supporting individual tax refund claims.

It is apparent that appellant has misapplied our hold-

ing in the *Krabach* case. In the first paragraph of the syllabus the words "investigate or require further proof" were intended to indicate synonymous, and not alternative, procedures. The *Krabach* decision certainly did not invest appellant with the plenary investigatory powers he now seeks to exercise. Furthermore, it is by now a legal commonplace that the syllabus of a case is to be read and appraised in the light of the facts on which the case is predicated. 14 Ohio Jurisprudence 2d 683, Courts, Section 248.

In *Krabach* the auditor, because of the use of cover plates, could not determine whether gasoline and oil purchased with a state credit card were lawfully used in a state-owned vehicle, for which the card was issued, or were unlawfully used in another, privately-owned vehicle. Accordingly, he refused to draw warrants for certain charges to state vehicles with cover plates.

This court, in denying a petition for a writ of mandamus, held that the auditor has a statutory responsibility to make a finding of the legality of a claim before he draws a warrant for payment, and that, under the circumstances, the auditor acted properly in refusing to issue his warrant until further proof of the claims were presented to him. We also indicated that the sufficiency of the proof of a claim's legality and validity would depend upon the circumstances of each individual case.

The instant case concerns the auditor's function with respect to the issuance of warrants for motor vehicle fuel tax refunds. R. C. 5735.13, 5735.14, 5735.141 and 5735.142 allow taxpayers to apply to the appellee for refunds of motor vehicle fuel taxes. Each of the four sections specifically provides that the appellee Tax Commissioner *shall determine* the amount of the refund due, *shall certify* such amount to the Auditor of State, and each mandates that the Auditor of State *shall draw a warrant* for the certified amount.[1]

---

[1]Although the sole issue decided by this court is the nature of the auditor's duties relative to the issuance of warrants for motor vehicle fuel tax refunds, appellee correctly points out that the General As-

The statutory appellate process further delimits appellee's role in the tax refund process. R. C. 5717.02 provides taxpayers with a right to appeal *final determinations* of the Tax Commissioner to the Board of Tax Appeals. This includes determinations as to the amount of any tax refund. The board's decision is then appealable as of right to this court pursuant to R. C. 5717.04. Conspicuous by its absence is any provision in R. C. Title 57 for an administrative review by appellant of the final determinations made by appellee.

In our view appellant may not refuse to issue warrants for the refund of motor vehicle fuel taxes, as certified by appellee, since such certification furnishes appellant with an indicia that a claim is valid against the state, legally due, and in compliance with all requirements of law. Clearly, the administrative processes specifically established by the General Assembly would be disrupted and impaired if appellant were to refuse to issue warrants until supplied with further proof of the thousands of such claims received by appellee.[2] Accordingly, where the Tax Commissioner presents the Auditor of State with vouchers for the refund of motor vehicle fuel taxes, the Auditor's statutory obligation to determine the legality of the vouchers, as set forth in R. C. 115.35, is accomplished by an examination of the voucher alone.

Appellant, however, in the instant case, seeks to acquire further proof of motor vehicle fuel tax refunds by the issuance of a subpoena, relying upon R. C. 117.03 as statutory authority therefor. An examination of R. C. Chapter 117 reveals that such reliance is misplaced.

---

sembly has designated a virtually identical procedure in every section of the Revised Code dealing with the refund of taxes from the state treasury. See, *e. g.*, R. C. 4307.05 and 4307.07 (liquor tax), R. C. 5728.061 (highway use tax), R. C. 5733.12 (franchise tax), R. C. 5739.07 (sales tax), R. C. 5741.10 (use tax), R. C. 5747.11 (income tax) and R. C. 5749.08 (severance tax).

[2] Counsel for appellee, during oral argument before this court, remarked that some 8,200 motor vehicle fuel tax refund claims were approved by appellee during the month of August 1977, alone, for a total amount of approximately $700,000.

R. C. 117.01 creates the Bureau of Inspection and Supervision of Public Offices, a division of the office of Auditor of State, and authorizes the bureau to inspect and supervise the accounts and reports of all state offices. R. C. 117.09 establishes that the bureau shall examine each public office, department or agency at least once every two years. R. C. 117.03 facilitates these biennial audits by granting the bureau the power to issue subpoenas and compulsory process. R. C. 117.10 provides, *inter alia*, that if the report of the examination reveals that state funds have been illegally expended, the Attorney General may initiate a civil action against the responsible state officer. See, *e. g.*, *State* v. *Herbert* (1976), 49 Ohio St. 2d 88.

Counsel for appellant has admitted, during oral hearing before this court, that the subpoena under dispute was issued in order to implement a "spot check" for possible arithmetical errors made by appellee in the computation of motor vehicle fuel tax refunds. In our opinion the subpoena power granted to the Bureau of Inspection and Supervision of Public Offices, in R. C. 117.03, is intended to facilitate the comprehensive biennial examination of public offices, as required by R. C. 117.09, in contradistinction to the daily examination of individual vouchers mandated by R. C. 115.35.

A final contention raised by appellant is that the records and documents kept by appellee and utilized in the determination of motor vehicle fuel tax refunds are public records, within the meaning of R. C. 149.43,[3] and must be open at all reasonable times for inspection by appellant.

We need not determine whether the subpoenaed ma-

---

[3] R. C. 149.43 reads as follows:

"As used in this section, 'public record' means any record required to be kept by any governmental unit, including, but not limited to, state, county, city, village, township, and school district units, except records pertaining to physical or psychiatric examinations, adoption, probation, and parole proceedings, and records the release of which is prohibited by state or federal law.

"All public records shall be open at all reasonable times for inspection. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time."

terials constitute public records or, rather, are excepted from the operation of R. C. 149.43, as urged by appellee. The order issued by the Court of Common Pleas of Franklin County enjoined appellant and his agents from enforcing previously served subpoenas, from issuing any additional subpoenas to appellee requesting the applications and affidavits which support individual claims for tax refunds, and from delaying the issuance of warrants for the refund of taxes upon receipt of a proper certification by appellee. We believe the ruling of the trial court to be a correct one, for the reasons set out above, and find no language in the lower court judgment which might be construed as infringing upon the right of the citizenry to the inspection of public records.

The judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, W. Brown, P. Brown, Sweeney and Locher, JJ., concur.