Kenneth WEAVER, Plaintiff,

v.

SHOPSMITH, INC., Defendant.

No. C–3–81–031.

United States District Court, S.D. Ohio, W.D.

Nov. 3, 1982.

David P. Simerman, Westport, Conn., for plaintiff.

D. Jeffrey Ireland, Charles J. Faruki, Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT; PLAINTIFF GIVEN THIRTY DAYS TO RETAIN COUNSEL IN THE SOUTHERN DISTRICT OF OHIO

RICE, District Judge.

This matter involves the question of whether an employment contract between Plaintiff and Defendant was "terminable at will" by either party. Plaintiff Kenneth Weaver worked at Defendant Shopsmith, Inc., for a short time, and then was either fired or agreed to leave, depending on which party's version of the events is accepted. Shopsmith has filed a motion to dismiss or for summary judgment, contending that said contract was terminable at will by Defendant, and that Plaintiff has no cause of action thereunder. For the reasons set forth below, both motions are not well taken, and same are overruled.

## I. *Procedural Posture*

Plaintiff initially filed this case, as a diversity action, in the Federal District Court for the District of Connecticut. In his complaint, Plaintiff alleges that on or about February 15, 1979, he and Shopsmith entered into a contract, under the terms of which Defendant agreed to employ him as a Divisional Mail Order Manager "for a minimum period of one (1) year, at a salary of $37,500.00 per annum, plus a minimum incentive compensation of $5,000.00." Complaint, ¶ 4. In reliance on the contract, Plaintiff further alleges that he moved with his family from Connecticut to Ohio, in order to work at Defendant's Vandalia, Ohio plant. Despite having "met all of the obligations required of him under said contract of employment," Plaintiff alleges that Defendant nevertheless "terminated" him on or about May 10, 1979, "contrary to its contractual obligations to employ plaintiff for a period at least one year's duration." ¶¶ 7–8. Plaintiff prayed for damages in the amount of $22,159.05.

Defendant thereupon filed a motion (Conn.Doc. # 6) to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), or to transfer venue to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). After the motion was fully briefed, Magistrate Smith recommended that the motion to transfer venue be sustained, and did not find it necessary to rule on the motion to dismiss. Judge Ellen Burns endorsed the Magistrate's rul

ing, and ordered the within matter to be transferred to the Southern District of Ohio. In this district, Defendant has filed three supplemental memoranda (Docs. # 3–5) in support of its motion, which it now characterizes as a motion to dismiss *or* for summary judgment.

At the outset, the Court must decide which state's law governs this action. It is settled that in actions transferred under 28 U.S.C. § 1404(a), the transferee court must apply the same choice-of-law rules as would the transferor court. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, n. 8, 102 S.Ct. 252, 259 n. 8, 70 L.Ed.2d 419 (1981); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Martin v. Stokes,* 623 F.2d 469 (6th Cir.1980). The federal district court sitting in Connecticut would, of course, apply the choice-of-law rules of that state. *Klaxen Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, this Court must apply those same rules.

Under Connecticut law, the law of the place the contract is entered into will control the validity and construction of the contract, unless the contract is to be performed elsewhere. *Whitfield v. Empire Mutual Ins. Co.,* 167 Conn. 499, 506, 356 A.2d 139, 143 (1975); *Graham v. Wilkins,* 145 Conn. 34, 138 A.2d 705 (1958). The parties do not contest the fact that the contract in question herein was to be and was wholly performed, at least for a short time, in Ohio. Thus, under Connecticut law, the law of Ohio should be applied to the contract.

II. *Defendant's Motion to Dismiss is Overruled.*

In a motion to dismiss, pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint, and only sustain the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976).

Defendant vigorously argues that the case of *Henkel v. Educational Research Council,* 45 Ohio St.2d 249, 344 N.E.2d 118 (1976), fully controls this action and supports dismissal of the lawsuit. The syllabus [1] in *Henkel* states that:

> In the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party.

Defendant argues that the contract described in the complaint does not provide for a "specific term," and only contemplates an annual rate of compensation. Thus, under *Henkel,* said contract is terminable at will by either party.

The Court cannot agree. It is true that if Plaintiff *only* alleged an annual rate of compensation, the contract would be terminable at will, and dismissal would be proper, based on *Henkel.* However, Plaintiff does allege "facts and circumstances" which might "indicate that the agreement is for a specific term." Specifically, Plaintiff alleged the agreement was "for a minimum period of one (1) year," and that he moved to Ohio in reliance on the contract. These allegations explicitly and implicitly suggest that the parties did not consider the agreement to be one terminable at will, and that it did set a "specific term," *i.e.,* a "minimum" of one year. Thus, when considering the allegations in the complaint alone, it is possible to construe same as suggesting that the agreement did, in the words of *Henkel,* make "provision as to the duration of the employment." Based on

---

1. For Ohio decisions, the syllabus of the case states the law. *Engle v. Issac,* 456 U.S. 107, 111 n. 3, 102 S.Ct. 1558, 1563 n. 3, 71 L.Ed.2d 783 (1982); *Truesdale v. Dallman,* 690 F.2d 76 at 77 n. 1 (6th Cir.1982). However, the balance of the decision may be consulted in order to fully understand the syllabus. *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 566, 97 S.Ct. 2849, 2852, 53 L.Ed.2d 965 (1977); *Lindley v. Ferguson,* 52 Ohio St.2d 60, 369 N.E.2d 482 (1977).

the allegations of the complaint, and applying *Henkel,* the contract is not terminable at will. Accordingly, Defendants' motion to dismiss must be, and hereby is, overruled.

### III. Defendant's Motion for Summary Judgment is Overruled.

While Defendant did not formally file a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, it points out, quite correctly, that a motion to dismiss can be treated as a summary judgment motion, when matters outside the pleadings are considered. Rule 12(b). In this case, both Plaintiff and Defendant submitted affidavits and other Rule 56 materials in conjunction with their memoranda concerning the motion to dismiss. Moreover, there is no question that Plaintiff was given adequate notice of said motion, and had ample opportunity to respond to same, given that he *already* has filed Rule 56 materials, and that Defendant, over a year ago (Dayton Doc. # 3, p. 3), suggested that the motion to dismiss be treated as one for summary judgment. *See, Harrington v. Vandalia-Butler Bd. of Ed.,* 649 F.2d 434, 436 (6th Cir.1981); *Bilderbach v. City National Bank & Trust Co.,* 639 F.2d 331 (6th Cir.1981) (per curiam). Accordingly, the motion for summary judgment is ripe for decision.

Under Rule 56, Defendant's motion can only be sustained when the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Board of Education v. Pico,* —— U.S. ——, ——, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). With these standards in mind, the Court considers the grounds advanced in support of said motion.

On said motion, the arguments of the parties essentially focus on the contract of employment offered Plaintiff, contained in a letter from Defendant dated February 8, 1979 (Conn.Doc. # 4, Exh. A), which offer Plaintiff apparently accepted by the act of moving to Ohio and working in Defendant's Vandalia plant.[2] Said letter, from Larry Blank, Vice President of Sales of Shopsmith, to Plaintiff, states as follows:

Hello Ken:

I enjoyed chatting with you the other day. Was pleased to hear of your progress. As you suggested here is an outline of my recent offer to you.

1. As Divisional Mail Order Manager, you would have P & L responsibility for the mail order effort of the Shopsmith Marketing Group.

2. You would absorb the advertising staff and add new staff members to meet corporate objectives.

3. Your annual salary would be $37,500 plus incentive potential of $5,000 to $15,000. The incentive would be based on the following guidelines:

a. Sales performance of mail order progress to plan.

b. Control of expenses to budgeted.

c. Staff development.

Each of the three would have equal weight. Obviously, item *c* would be

---

**2.** The Court makes this statement cautiously, since the position of the parties in this regard is not crystal clear. For example, Defendant seems to argue that the contract involved is an *oral* one. Defendant's Motion to Dismiss or Transfer, Conn.Doc. # 6, p. 7; affidavit of Larry A. Blank, *id.,* Exh. B, ¶ 7. It might follow from this argument that reference to the February 8, 1979, letter is unnecessary. On the other hand, Plaintiff characterizes the contract as "written," Plaintiff's Memorandum in Opposition, Conn.Doc. # 9, pp. 11–16, since the offer of employment was by the letter. Affidavit of Kenneth A. Weaver, *id.,* Exh. B, ¶ 16.

In any event, Defendant, in its later memoranda, focuses on the terms of the letter, suggesting that it views the "offer" as written, but the "acceptance" as oral or by overt act. Unless other specified by the parties, such an acceptance is, of course, permissible under Ohio law, *e.g., Sinclair Refining Co. v. May Bros. Oil Co.,* 118 Ohio App. 263, 194 N.E.2d 75 (Allen Cty.1963) (per curiam) (acceptance by overt act); 17 O.Jur.3d *Contracts* §§ 30–31 (1980), and general contract law. 1 *Corbin on Contracts,* § 62 (1960 & 1982 Supp.)

subjective and a & b would be a combination of objective and subjective because of a lack of previous experience and the unknown impact of programs already under way.

In any event, I assure you if you meet sales goals within budget, plus develop an efficient staff I'll give you the higher of the range, or $15,000.

On your first anniversary date, we'll review your annual salary and implement an incentive program based on historical experience.

4. A five year stock option on 2,000 shares of the common stock of Shopsmith, Inc. at the current market value of $3.50 is available.

5. We'll reimburse you for any relocation expense related to moving your personal household items plus your families [sic] personal travel expenses.

Ken, I've also enclosed a copy of our employees handbook that outlines employee benefits such as insurance, etc. I'm anxious to have you on board our team Ken. I know you'll make a real contribution.

Sincerely,

SHOPSMITH MARKETING GROUP

/s/ Larry A. Blank

Larry A. Blank

Vice President of Sales

Defendant argues that this letter makes no reference to a "specific term" or to the "duration" of the employment. *Henkel, supra.* Indeed, Defendant insists that it never offered Plaintiff, or anyone else employed at Shopsmith, a contract for a specific term, since same was against company policy. Affidavit of Larry Blank, Conn. Doc. # 6, Exh. B, ¶6. Moreover, the letter's reference to an "incentive," or bonus, to be considered on the "first anniversary date," merely underscores "the absence of an annual contract," Defendant's Reply Memorandum, Conn.Doc. # 10, p. 10, since bonuses "are independent of an employee contract," and an "employee who displays no ability to achieve the standards applicable to a bonus could reasonably expect to be dismissed before a year's employment." *Id.*

In addition, the reference to a "five year stock option" is of no significance, since that plan expressly states that it confers no rights to continued employment upon an employee. *Id.,* Ex. E, p. 4, § 8. Finally, Defendant contends that even if Plaintiff's characterization of the contract is correct, he was put on notice, when Mr. Blank discussed the employment situation with him, that Defendant

did not believe such a contract was in effect. Further, Plaintiff's acceptance of the probationary period and Plaintiff's effort to improve his performance waived whatever rights he would have under an implied annual contract.

*Id.* at p. 13.

In contrast, Plaintiff acknowledges that a mere annual rate of compensation is insufficient, under *Henkel,* but argues that there are other "facts and circumstances which indicate that the agreement is for a specific term." *Henkel, supra.* Plaintiff was under the impression that the contract was for at least one year. Affidavit of Kenneth D. Weaver, Conn.Doc. # 9, ¶ 17. (See also allegations in the complaint, verified by Plaintiff.) Unlike Defendant's version of his tenure at Shopsmith, he states that he was "abruptly dismissed" on May 10, 1979. *Id.,* ¶ 23. The reference to an incentive bonus on the "first anniversary" supports the interpretation that the contract was for at least one year, as does Plaintiff's decision to relocate—to be reimbursed by Defendant, by the express terms of the letter. At the very least, Plaintiff concludes, disputed issues of intent should be presented to the finder of fact.

The Court largely agrees with Plaintiff. It is true that the contract refers to an annual rate of compensation, as in Henkel, and the reference to a stock option is inapposite, for the reasons advanced by Defendant. But there exist genuine issues of material fact regarding the existence of other "facts and circumstances which indicate that the agreement is for a specific term." No such "facts or circumstances" were found in *Henkel,* the Court stating that:

no evidence, including appellee's own testimony, indicates that appellee was offered employment which specified one year, or any period of time, or that appellee believed the agreement to so specify. Explicit Research Council policy forbade such a contract.

45 Ohio St.2d at 261, 344 N.E.2d at 125. In addition, the *Henkel* Court elaborated on what might constitute other "facts or circumstances." Such other facts included if the job was "an important one and of a kind such that a temporary appointment would not be likely to be made," whether "the employee has made an important change in his general relations in order to accept the position, such as the removal of himself and his things to a new place," and what the "custom in the business" was. *Id.* at 256, 344 N.E.2d at 122 (citing 2 Restatement of Agency (2d) § 442, comment 6). *See also,* Annot., 93 A.L.R.3d 659 (1979).

■ Plaintiff has properly set forth facts which may fall within the ambit of such "facts or circumstances." Unlike the appellee in *Henkel,* Plaintiff herein *does* aver that he believes the contract was for at least one year. This belief, coupled with the terms of the contract, could support Plaintiff's interpretation of the contract. The construction of written contract terms are, of course, a matter of law to be initially determined by the Court. *Rockwell International Corp. v. Regional Emergency Medical Services of Northwest Ohio, Inc.,* 688 F.2d 29, 32 (6th Cir.1982) (construing Ohio contract law); *Apponi v. Sunshine Biscuits, Inc.,* 652 F.2d 643, 651 n. 12 (6th Cir.1981) (same). If the contracting parties used "uncertain or ambiguous language," however, the trier of fact must "determine the intent and meaning" of the parties in the use of said language. *Apponi, supra.*

This Court finds that, arguably, the contractual language referring to bonuses [3] on a "first anniversary," and the reimbursement of relocation expenses, could support Plaintiff's alleged intent. Questions of intent are rarely resolvable on a motion for summary judgment. *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1127 (6th Cir. 1981), *rehearing denied,* 668 F.2d 878 (6th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). The Court also notes that Defendant's "waiver" theory also presents triable issues of fact; Mr. Blank contending that he had spoken with Plaintiff regarding his poor work performance, with the Plaintiff insisting that he was "abruptly" dismissed. *See, Apponi, supra,* 652 F.2d at 649. For these reasons, genuine issues of material fact remain, and Defendant's motion must be, and hereby is, overruled.

This result is not changed by consulting the unreported Ohio decisions proffered by Defendant (Dayton Docs. # 3–5).[4] In two of the cases, *Day v. Good Samaritan Hospital,* No. 81–1726 (Montgomery Cty.Ct. Common Pleas, 1982); *Baric v. Firestone Tire & Rubber Co.,* No. C81–77A (N.D.Ohio 1981), the Courts held that an "employee personnel manual" could not be considered as part of the employment contract. The written offer of employment in this case also referred to an "employees handbook," and, standing alone, said reference would be insufficient to support Plaintiff's interpretation of the contract. However, as noted above, Plaintiff relies on *other* provisions in the contract.

Similarly, three other cases, *Schmitt v. Reams Broadcasting Corp.,* No. CV78–1949 (Lucas Cty.Ct.App.1980); *Spain v. Luxaire, Inc.,* No. 2800 (Lorain Cty.Ct.App.1979);

---

**3.** As noted above, Defendant argued, without citing authority, that bonuses "are independent of an employment contract." Under Ohio law, gifts or bonuses are mere gratuities to be granted at the discretion of an employer, *unless* the bonus is a part of the contract. *Hobson v. Eaton,* 399 F.2d 781, 785 (6th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969); 35 O.Jur.2d *Master and Servant,* § 36 (1959). In this case, the bonus or incentive is referred to in the offer of employment, and the intent of the parties with regard to same is a matter of dispute, and must be left to the trier of fact.

**4.** Unpublished opinions of Ohio lower courts may be cited where they are "reasonably widely" distributed, and remain unchanged by a decision of the Ohio Supreme Court. *Keener v. Ridenour,* 594 F.2d 581, 586 (6th Cir.1979).

**354**

*Tullos v. Ponderosa Systems,* No. 78AP–364 (Franklin Cty.Ct.App.1978), all involved oral contracts and other circumstances which indicated that no contract for a specific duration was at issue, so as to fall outside the *Henkel* rule. In *Wells v. University of Cincinnati,* No. C–790356 (Hamilton Cty.Ct.App.1980), a written contract *expressly* stated that continued employment was at the discretion of the employer. Finally, a finding of summary judgment was upheld in *Button v. Fairkap, Inc.,* No. C–800134 (Hamilton Cty.Ct.App.1981), since the plaintiff had not complied with Ohio R.Civ.P. 56(e), and the facts therein, in any event, indicated that no material difference from those in *Henkel.* As the above discussion should indicate, these cases are somewhat similar to, but are not "on all fours," with the action herein. Plaintiff has sufficiently set forth "facts and circumstances" which could support his claim that the *Henkel* rule does not mandate that the contract herein be held, as a matter of law, to be terminable at will.

IV. *Conclusion*

For all of the foregoing reasons, Defendant's motions to dismiss or for summary judgment are overruled. As per the letter of May 5, 1981, from this Court to counsel, Plaintiff will have thirty days from the date of receipt of notice of this entry to retain counsel in the Southern District of Ohio. Plaintiff should inform this Court, by letter, at the end of that period, whether he has retained said counsel and intends to further proceed with this action.

Following the receipt of said notice, a further preliminary pretrial conference will be set for the purpose of setting a trial date, date for final pretrial conference, a discovery cut-off date, et cetera.