Harley J. COON, Plaintiff,

v.

Robert FROEHLICH, et al., Defendants.

No. C–3–81–337.

United States District Court,
S.D. Ohio, W.D.

Oct. 7, 1983.

Konrad Kuczak, Dayton, Ohio, for plaintiff.

Brian D. Weaver, Dayton, Ohio, for defendants.

DECISION AND ORDER GRANTING DEFENDANTS FODAL AND DANIELS' MOTIONS FOR SUMMARY JUDGMENT; DEFENDANTS FODAL AND DANIELS DISMISSED AS DEFENDANTS IN THIS ACTION; CLERK TO ENTER JUDGMENT FOR FODAL AND DANIELS AND AGAINST PLAINTIFF; PLAINTIFF'S MOTION FOR COSTS OVERRULED AS TO DEFENDANT FROEHLICH; RULING DEFERRED AS TO DEFENDANTS BRAILEY AND McGRATH

RICE, District Judge.

This case arises out of the alleged removal of certain political signs. Plaintiff, a resident of Beavercreek, Ohio, was among those Beavercreek residents who were opposed to the adoption of a charter for their municipality. Shortly before the election at which voters would decide whether to adopt the charter, Plaintiff put up a number of signs that said: "Vote No Charter." On the eve of the election, these signs were removed.

The Plaintiff brought this action alleging that the removal of the signs violated his First Amendment rights. The action is alleged to arise out of 42 U.S.C. §§ 1983 and 1985(3). The precise allegations contained in Plaintiff's complaint were set forth in a previous decision by this Court. *Coon v. Froehlich*, 556 F.Supp. 115 (S.D.Ohio 1983).

This cause is now before the Court on motions for summary judgment of Defendants Fodal and Daniels, and Plaintiff's motion for costs arising out of a discovery dispute. The motions for summary judgment shall be the focus of our initial inquiry.

I. MOTION FOR SUMMARY JUDGMENT

Before discussing the issues raised by these motions, it would be helpful to restate the standards that govern the determination of summary judgment motions. Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion shall not be granted unless there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In the recent case of *Snider v. Creasy*, 548 F.Supp. 601 (S.D.Ohio 1982), this standard was summarized:

> The summary judgment standard in this Circuit is a stringent one. Federal Rule of Civil Procedure 56(c) permits the Court to grant summary judgment only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974). In deciding a Motion for Summary Judgment, the Court must construe evidence in a light least favorable to the movant and most favorable to the opposing party. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962).

*Id.* at 602. *See also, Weaver v. Shopsmith, Inc.*, 556 F.Supp. 348, 351 (S.D.Ohio 1982).

A. DEFENDANT FODAL'S MOTION FOR SUMMARY JUDGMENT SUSTAINED

Defendant Fodal bases his motion for summary judgment on the assertion that his involvement in the "conspiracy" against Plaintiff was solely in his capacity as Beav-

ercreek Prosecuting Attorney and, as such, he has absolute immunity. Plaintiff's Complaint alleges that Fodal, acting under color of his office, caused the removal of the signs either personally or through his agents, a number of the other defendants. Discovery has been had, and from the depositions of the Plaintiff and Fodal, it is apparent that Fodal was not involved with the removal of the signs. He did not remove any sign personally, nor did he authorize or direct any of the other defendants, or anyone else, to remove a sign. Rather, Fodal's only participation in this "conspiracy" came after the signs were removed.

After the election, Plaintiff and Fodal discussed the possible prosecution of Defendants Gordon and Bush on criminal mischief charges for removing the signs. Fodal informed Plaintiff that he had prepared complaints against Bush and Gordon, and that Plaintiff could come pick them up so that they could be filed in court. This, the Plaintiff did. Shortly thereafter, Fodal conferred with Defendants Froehlich and Kaminski, and the prosecutions of Gordon and Bush were dropped.

■ Plaintiff does not dispute any of this. Rather, in his memorandum in opposition to Fodal's motion for summary judgment, Plaintiff argues that the "conspiracy" against him involved not only the removal of signs but also Fodal's decision to terminate the prosecution of the perpetrators.[1] Hence, this motion raises the question of whether a prosecutor has absolute immunity for deciding not to prosecute a person or to terminate a prosecution.[2]

■ A public prosecutor has absolute immunity from civil suit under Civil Rights Acts such as 42 U.S.C. §§ 1983 and 1985(3) for initiating prosecutions and the conduct of them. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Macko v. Bryon*, 641 F.2d 447 (6th Cir. 1981).[3]

In *Imbler*, the Court did not discuss the present question of whether a prosecutor is likewise immune for deciding not to initiate, or to terminate, a criminal prosecution. The Plaintiff argues that there is no case law to support absolute immunity in instances such as these.

On the contrary, there is an abundance of case law on the subject, and it uniformly holds that a prosecutor is absolutely immune from civil suit based on the prosecutor's decision either not to prosecute, or to terminate a prosecution. *See Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.1982); *Curry v. Jensen*, 523 F.2d 387 (9th Cir.1975), *cert. denied*, 423 U.S. 998, 96 S.Ct. 428, 46 L.Ed.2d 373 (1975); *Turack v. Guido*, 464 F.2d 535 (3d Cir.1972); *O'Connor v. Nevada*, 507 F.Supp. 546 (D.Nev.1981); *Maynard v. Kear*, 474 F.Supp. 794 (N.D.Ohio 1979); *Raitport v. Provident National Bank*, 451 F.Supp. 522 (E.D.Pa.1978); *Tyler v. Ryan*, 419 F.Supp. 905 (E.D.Mo.1976). *See also, Lundblade v. Doyle*, 376 F.Supp.

---

**1.** In the memorandum, Plaintiff says:

It is the contention of the Plaintiff herein that the conspiracy itself not only involved the physical removal of the "Vote No Charter" signs from where the Plaintiff and the other members of his Committee had placed them for display, but also included the abuse of the public [office] of * * * the Defendant Fodal "under color of law" to insure that the violation of the Plaintiff's rights to free speech concerning the issue of the election remained unredressed and the perpetrators of an obviously criminal act went unpunished.

**2.** Previously, Fodal moved to dismiss Plaintiff's complaint on the basis of absolute immunity. The Court overruled that motion because the complaint alleged that Fodal had in some manner participated in the removal of the signs,

rather than merely refusing to prosecute those who took the signs down. Prosecutorial immunity is functional, and whether a prosecutor is absolutely immune from civil liability is dependent upon the circumstances in which it is asserted. *See Gray v. Bell*, 712 F.2d 490 (D.C. Cir.1983). Here, the circumstances are now radically different, so Plaintiff's argument that the law of the case precludes the continued assertion of absolute immunity is without merit.

**3.** *Imbler* involved a prosecutor's absolute immunity in a 1983 action. However, the public policy reasons, that supported absolute immunity there, are equally applicable to actions raising asserted violations of other Civil Rights Acts, such as § 1985(3). *See, Ross v. Meagan*, 638 F.2d 646, 649 n. 2 (3d Cir.1981); *Iseley v. Bucks County*, 549 F.Supp. 160, 167 (E.D.Pa.1982).

57 (N.D.Ill.1974) (failure to investigate crime and issue warrant).

In *Raitport v. Provident National Bank, supra,* the court reasoned that prosecutors must be absolutely immune from civil suit for decisions *not* to prosecute because of their absolute immunity for decisions *to initiate* criminal proceedings. A "one-sided" immunity might subtly encourage decisions to prosecute rather than not prosecute, thus, "contaminat[ing] the prosecutorial decision-making process." 451 F.Supp. at 528.

 This Court is persuaded by that reasoning and the uniform authority that a prosecutor has absolute immunity for deciding not to prosecute a person or to terminate an ongoing prosecution. Since Fodal's only participation in the "conspiracy" against Plaintiff was his decision to terminate the prosecutions against Bush and Gordon, he has absolute immunity from the liability asserted in this suit.[4] Consequently, Fodal's motion for summary judgment is granted. The Clerk will enter judgment for Defendant Fodal and against Plaintiff on the second amended complaint. Defendant Fodal is hereby dismissed as a Defendant in this action.

## B. DEFENDANT DANIELS' MOTION FOR SUMMARY JUDGMENT SUSTAINED

In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Court set forth the elements of a cause of action under § 1985(3):

To come within the legislation a complaint must allege that the defendants did (1) "conspire to go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immuni-

ties under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798–1799.

In his motion for summary judgment, Daniels argues that his participation in a conspiracy against Plaintiff is not a question of fact. He asserts that he was not a part of the alleged conspiracy to deprive Plaintiff of his First Amendment rights. Accordingly, he is entitled to judgment as a matter of law since Plaintiff could not prove an essential element of a § 1985(3) action, to wit: that Daniels was a part of a conspiracy against him.[5] In support of his motion, Daniels relies upon his deposition and that of the Plaintiff. His deposition reveals that after conferring with a member of the Ohio Elections Commission, Daniels removed one of the signs as evidence that Plaintiff violated state election laws. Daniels had no contact with any of the other Defendants about the signs until after he had removed it. Sometime after removing it, Daniels telephoned Defendant Froehlich in order to tell Froehlich that he wanted to file a complaint through the City Manager's office. At no time during this conversation did Froehlich tell Daniels to remove more signs. Likewise, no other Defendant communicated with Daniels to encourage him to remove more of the Plaintiff's signs. Finally, Daniels sent the sign that he removed to the Ohio Elections Commission. From all of this, Daniels argues that since he secured only one sign prior to any discussion with the other Defendants, he was not part of a conspiracy against Plaintiff.

---

**4.** Plaintiff also argues that Fodal entered the "conspiracy" against him by terminating the prosecutions of Gordon and Buck. Consequently, he may be liable for all that preceded that action. This assertion is without merit. To hold a prosecutor so liable would undercut the absolute immunity to which he is entitled.

**5.** Likewise, Plaintiff must prove that Daniels was part of a conspiracy in order to prevail in the count of his complaint alleging violation of § 1983.

In *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the court discussed civil conspiracies, saying:

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" *Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir.1973) (citation omitted). In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "[c]ircumstantial evidence may provide adequate proof of conspiracy." *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir.1971). *See also*, *United States v. Varelli*, 407 F.2d 735, 741–42 (7th Cir.1969). Absent the testimony of a co-conspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all participants therein." *Hoffman-LaRoche, Inc., supra*, 447 F.2d at 875. An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspira-

torial result. To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.*

*Id.* at 620–21. *See also, Lenard v. Argento*, 699 F.2d 874, 882–83 (7th Cir.1983).

■ Based upon the unchallenged evidence reviewed above, the Court concludes that there is no genuine issue of fact about Daniels' participation in a conspiracy at the time he removed the sign. He had not discussed the signs with any other Defendant prior to removing one. Therefore, Plaintiff has not shown the existence of a genuine issue of a material fact on the question of whether Daniels was part of a conspiracy because he has not shown that when Daniels removed the sign there was a single plan to deprive Plaintiff of his rights, the essential nature and general scope of which was known to Daniels.

Nevertheless, Plaintiff argues that a material fact question remains. He claims that Daniels exhibited an ill will against Plaintiff by removing one of his signs. Subsequently, he discussed with Froehlich this removal and conspicuousness of the signs. He could not remember whether he conversed with Defendant Kaminski. Plaintiff contends that this demonstrates the existence of a material question of fact. Did Daniels join the conspiracy when he talked to Froehlich? If so, Plaintiff asserts that Daniels may be held liable for all acts of the conspiracy that preceded his entry into it. Therefore, Plaintiff argues, this motion must be overruled.

■ The Court does not dispute that one who joins a conspiracy after its formation, with knowledge of what has gone on before, may be held liable for all of the conspiracy's preceding acts. *See e.g., Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F. 1336, 1343 (9th Cir.1970). However, to hold one so liable it must be shown that he participated in the conspiracy after entering it. *In re Nissan Motor*

*Corp. Antitrust Litigation,* 430 F.Supp. 231, 233–34 (S.D.Fla.1977). *See also, In re Investors Funding Corp. of N.Y. Securities Litigation,* 523 F.Supp. 550, 557 (S.D. N.Y.1980); *Byrd v. Local Union No. 24, Int. Bro. of Electrical Workers,* 375 F.Supp. 545, 558–59 (D.Md.1975) (mere knowledge of a conspiracy not sufficient to establish liability).

Daniels' participation in the conspiracy after talking to Froehlich is not a question of fact. All evidence points to the only one possible conclusion. Daniels testified that he did not remove another sign after talking to Froehlich. Froehlich did not tell or encourage Daniels to do so. Plaintiff's deposition reveals that he is not aware that Daniels did anything against his First Amendment rights after the initial removal. Hence, even assuming Daniels' conversation with Froehlich could prove he entered the conspiracy, he did not subsequently participate in it; therefore, he cannot be held liable as a latecomer to the same.

Since Daniels was not a member of a conspiracy when he removed the sign, and he did not join the conspiracy merely by talking to Froehlich, Plaintiff has not established a genuine issue of material fact on the necessary predicate to Daniels' liability, to wit: his participation in the conspiracy. Consequently, Daniels is entitled to judgment as a matter of law. Accordingly, the Court grants Daniels' motion for summary judgment. The Clerk will enter judgment for Defendant Daniels and against Plaintiff on the second amended complaint. Defendant Daniels is hereby dismissed as a Defendant to this action.

## II. PLAINTIFF'S MOTION FOR COSTS

Plaintiff's Motion for Costs arises out of the aborted depositions of Defendants Froehlich, Brailey and McGrath. Pursuant to agreement of counsel, certain depositions were scheduled to take place on April 20, 1983, at 9:00 a.m. None of the Defendants nor their counsel appeared at the designated location at appointed hour. Accordingly, Plaintiff's counsel dismissed the court reporter and now seeks costs, including reasonable attorney's fees, incurred by Defendants' failure to appear for their deposition.

 Rule 37(d) of the Federal Rules of Civil Procedure provides for the imposition of sanctions when a party fails to attend his or her deposition. It reads:

> If a party * * * fails (1) to appear before an officer who is to take his deposition, after being served with a proper notice, * * * the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The sanctions of Rule 37(d) may be imposed even in the absence of an order compelling discovery. *See* 4A Moore's Federal Practice, ¶ 37.05; 8 Wright & Miller Federal Practice and Procedure, § 2291.[6]

 As to the failure of Froehlich to attend his deposition, it appears that through an error by his counsel, he was present for his deposition at 9:30 a.m. rather than at 9:00 a.m. By that time, counsel for Plaintiff had dismissed the court reporter. Prior to dismissing the court reporter, counsel for Plaintiff did not attempt to contact Froehlich's counsel. Froehlich's deposition was taken at a later date. The Court will assume for purposes of deciding this motion that 30 minutes' tardiness constitutes failure to attend. However, in the Court's opinion, it would be unjust under the present circumstances to make an

---

**6.** Plaintiff has not moved for sanctions under Rule 37(b)(2)(A), (B) or (C), so the propriety of imposing any sanction contained therein need not be discussed.

award of expenses. Therefore, the Court overrules Plaintiff's motion insofar as it relates to Froehlich's failure to attend.

Until a more adequate record can be made, the Court will defer ruling on that portion of Plaintiff's motion relating to the non-appearance of Brailey and McGrath. At present, it is not clear who was to appear when and where. The affidavit filed in support of Plaintiff's motion appears to conflict with the exhibit (a letter from Defendant's counsel to Plaintiff's counsel) attached thereto. The Court cannot say with certainty whether either Brailey or McGrath failed to attend, and if so, whether it would be unjust under the circumstances to order the payment of expenses. Therefore, as previously mentioned, resolution must be deferred.