CENTEL CABLE TELEVISION COMPANY OF OHIO, INC., APPELLANT, *v.* COOK ET AL., APPELLEES; DAYTON POWER & LIGHT COMPANY; APPELLEE.

[Cite as Centel Cable Television Co. of Ohio, Inc. *v.* Cook (1991), 58 Ohio St. 3d 8.]

(No. 89-2011—Submitted November 28, 1990—Decided March 6, 1991.)

10

*Squire, Sanders & Dempsey, Terence J. Clark, Judith A. Yokaitis-Skutnik* and *Thomas E. Palmer,* for appellant.

*Allen, Howard, Yurasek & Merklin, David F. Allen* and *Jeffrey A. Merklin,* for appellees Cook.

*Denis E. George,* for appellee Dayton Power & Light Co.

*Baker & Hostetler, John H. Burtch* and *Jane S. Arata,* urging affirmance for *amicus curiae,* Ohio Association of Realtors, Inc.

*Vorys, Sater, Seymour & Pease* and *W. Jonathan Airey,* urging reversal for *amicus curiae,* Ohio Cable Television Assn.

WRIGHT, J. This case presents the question of whether an easement granted to a utility company may be apportioned and partially assigned to a cable television company in a situation where the grantors were silent regarding their intent to allow apportionment of the easement and where the grantors made no express reservation regarding apportionment. We answer this question in the affirmative. Thus, we must reverse the judgment of the court of appeals on this issue. This case also asks us to interpret a contract between the utility company and the cable company allegedly assigning an interest in the easement. Due to an incomplete record, we choose not to do this and instead remand to the trial court.

### I

It is settled that "[where an easement[1] in gross[2]] is created by conveyance, apportionability depends upon the intention of the parties to the conveyance." (Footnotes added.) *Jolliff* v. *Hardin Cable Television Co., supra,* at 107, 55 O.O. 2d at 205, 269 N.E. 2d at 590, citing 5 Restatement of the Law, Property (1944) 3053, Section 493, Comment *b.* Because the parties' intentions are best expressed in the language of an agreement, we must first examine the Cooks' 1965 deed of easement to DP&L to determine if the parties intended that DP&L's rights under the easement be apportionable and partially assignable. *Jolliff, supra,* at 106, 55 O.O. 2d at 590, 269 N.E. 2d at 204.

As stated above, the Cooks' deed granted and conveyed a right of way and easement to DP&L, "its successors and assigns forever." A number of courts have recently held that such language is sufficient, in and of itself, to indicate the grantor's intent to convey the right to apportion. Others have held that the grantor's intent to so convey can be inferred even in the absence of such language. See *Henley* v. *Continental Cablevision of St. Louis Cty., Inc.* (Mo. App. 1985),

---

[1] An "easement" has been defined as:

"An interest which one person has in the land of another. A primary characteristic of an easement is that its burden falls upon the possessor of the land from which it issued and that characteristic is expressed in the statement that the land constitutes a servient tenement and the easement a dominant tenement." Black's Law Dictionary (6 Ed. Rev. 1990) 509.

[2] "An easement in gross" has been defined as:

"An easement * * * [that] is not appurtenant to any estate in land or does not belong to any person by virtue of ownership of estate in other land but is mere personal interest in or right to use land of another * * *." Black's Law Dictionary (6 Ed. Rev. 1990) 510.

692 S.W. 2d 825; *Salvaty* v. *Falcon Cable Television* (1985), 165 Cal. App. 3d 798, 212 Cal. Rptr. 31; *Hoffman* v. *Capitol Cablevision System, Inc.* (1976), 52 App. Div. 2d 313, 383 N.Y. Supp. 2d 674; *Crowley* v. *New York Tel. Co.* (1975), 80 Misc. 2d 570, 363 N.Y. Supp. 2d 292. See, also, Cunningham, Stoebuck & Whitman, Law of Property (1984) 463, Section 8.11. We decline at this time to hold that such language is sufficient to express the grantor's clear intent to grant DP&L the right to apportion its easement and so move on to the next step in our analysis.

We held in *Jolliff, supra,* at 107, 55 O.O. 2d at 205, 269 N.E. 2d at 590, that where the grantor's intent to convey the right to apportion is unclear, the court must employ rational rules of construction to determine the intent of the grantor. One such rule of construction infers apportionability where the holder of the easement (here DP&L) possesses the right to the exclusive use of the easement. Restatement of Property, *supra,* at 3053, Section 493, Comment *c.* In the present case, the easement that the Cooks granted to DP&L prohibits them from doing anything inconsistent with the terms of the easement or from constructing buildings or other structures within the limits of the easement, evidencing DP&L's exclusive right to use the easement. Cf. *Henley, supra,* at 827: "* * * if the rights granted are exclusive of the servient owners' participation therein, divided utilization of the rights granted are presumptively allowable."

Another rule of construction infers apportionability where the right to apportion the easement increases the easement's value to the holder of the easement. Restatement of Property, *supra,* at 3054, Section 493, Comment *c.* Clearly the value of DP&L's easement would increase if DP&L were allowed to apportion and partially assign or license its easement to other participants.

Satisfying both of these rules creates "* * * the inference in the usual case that the easement was intended in its creation to be apportionable." *Id.* Since the record reveals that insufficient evidence was presented to the trial court to rebut this inference, we find that the parties intended that DP&L's easement be apportionable.

## II

We must next determine whether Centel's use of the easement for the installation and servicing of a single coaxial cable television wire attached to DP&L's utility poles is similar to the use granted in the easement, and determine whether Centel's use of the easement places an additional burden on the Cooks' property. As we noted earlier, the easement that the Cooks granted and conveyed to DP&L was "* * * for a line for the transmission and/or distribution of electric energy thereover, for any and all purposes for which electric energy is now, or may hereafter be used." This grant was quite similar to the easement granted the defendant electric company in *Jolliff, supra.* In that case, Justice J.J.P. Corrigan, speaking for the court, stated: "It is apparent that the attachment of a television coaxial cable, which is comprised of bound wires for transmitting high frequency electrical impulses, is a use similar to that granted in the easements to Ohio Power." *Jolliff, supra,* at 108, 55 O.O. 2d at 205, 269 N.E. 2d at 591.

It is thus apparent that companies broadcasting television signals through coaxial cable utilize electrical power or "electric energy." Also, it is apparent that the language in the easement, "for which electric energy is now, or may hereafter be used," is broad enough to encompass the

development and expansion of the electronic medium of cable television. Therefore, we find that DP&L's allowing Centel to install and service its coaxial cable is a similar use permitted under the language of the easement and hold that the transmission of television signals through coaxial cable by a cable television company constitutes a use similar to the transmission of electric energy through a power line by an electric company.

This court has had several opportunities to review whether a new and additional use of an easement placed an additional burden upon the servient estate. See *Jolliff, supra; Ziegler* v. *Ohio Water Service Co.* (1969), 18 Ohio St. 2d 101, 47 O.O. 2d 244, 247 N.E. 2d 728; *Friedman Transfer & Constr. Co.* v. *Youngstown* (1964), 176 Ohio St. 209, 27 O.O. 2d 91, 198 N.E. 2d 661. In *Jolliff* we held:

"Where an easement is granted for 'the purpose of transmitting electric or other power, including telegraph or telephone wires,' the attachment thereunder by a lessee of the grantee of a television transmission cable to the grantee's telephone poles, for the transmission of high frequency electrical impulses, constitutes a use similar to that granted in the easement and does not create an additional burden on the land of the original grantor." *Jolliff, supra,* at paragraph two of the syllabus.

Similarly, we have held:

"The rule, that an easement granted to a city for street purposes includes the right of the city to install without compensation water pipes which impose no additional burden on the abutting property, applies to an easement granted to the state Department of Highways and its assigns for the purpose of constructing a bridge upon a highway within the city." *Friedman Transfer, supra,* at syllabus.

Further, we have also held:

"The construction and maintenance underground of a water pipeline, for public purposes, in real property outside a municipal corporation which is subject to an easement for highway purposes, is not an added burden on such property for which compensation must be awarded." *Ziegler, supra,* at syllabus.

We note that the question of whether an added use constitutes an additional burden is the same regardless of whether the added use involves a publicly or privately held easement. *Jolliff, supra,* at 107-108, 55 O.O. 2d at 205, 269 N.E. 2d at 591.

We consider the foregoing holdings to be persuasive. Therefore we find that Centel's use of the easement does not constitute an additional burden upon the Cooks' property, and hold generally that the stringing of coaxial cable by a cable television company along an easement owned by a public utility constitutes no additional burden to the owner of the servient estate.

Because the parties intended the easement to be apportionable, and because Centel's use of the easement constituted a similar use to DP&L's and did not constitute an additional burden upon the Cooks' property, we hold that DP&L was authorized to apportion and partially assign its easement to Centel.[3]

---

[3] We also note that there is a strong public policy interest in fostering cable television communications when they are consonant with a proper respect for the property rights of others. In discussing this medium, the United States Supreme Court referred to the " 'rapid development of and maximum penetration by a means of communication which has important educational and community aspects.' " (Citations omitted.) *Loretto* v. *Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 425.

## III

We must next determine whether DP&L did in fact apportion and partially assign its interests in the easement to Centel. Prior to January 1, 1984, the business relationship between DP&L and Centel was based upon the 1978 Joint Use Agreement with Centel's predecessor, Troy Cable. The parties stipulated that Centel first attached its coaxial cable television wire to DP&L's poles on the Cooks' property "sometime after January 1, 1982." Therefore, the record is unclear whether Centel attached to poles on the Cooks' property under the Troy agreement or under the 1984 Centel agreement. Further, the record does not contain the former agreement, and the latter agreement requires a further approval from DP&L before any particular pole attachment. There is no mention of specific approval for attachment to poles on the Cooks' property in the record.

Consequently, we reverse the appellate court and hold that DP&L's easement is apportionable and Centel's use of the easement is not an additional burden, and we vacate the trial court's finding that Centel's 1984 agreement with DP&L granted Centel permission to attach its wire to the DP&L poles on the Cooks' property. We remand the case to the trial court for a further examination of Centel's relationship with DP&L consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES and RESNICK, JJ., concur.

MOYER, C.J., DOUGLAS and H. BROWN, JJ., concur separately.

H. BROWN, J., concurring. I concur in the majority opinion. I write separately to make it clear that, while DP&L may have granted Centel a license to occupy the easement, it clearly did not convey any portion of the easement to Centel through the 1984 Pole Attachment and Joint Use of Trench Agreement ("Agreement").

The Agreement contains no visible words of conveyance, not even the simple word "grant" which is sufficient under R.C. 5302.03. There is only one witness' signature instead of the two required by R.C. 5301.01. There is no jurat. Though the document bears a notarial seal and a notary's signature, there is no formal acknowledgement, as also required by R.C. 5301.01. Most surprisingly, there is no evidence in the record that Centel attempted to record the Agreement — a course of action almost unthinkable in commercial real estate transactions.

As a conveyance of real property, the Agreement is ineffective as a matter of law. *Lessee of Patterson* v. *Pease* (1831), 5 Ohio 190 (deed with only one witness ineffective to pass title); *Sloane* v. *McConahy* (1829), 4 Ohio 157 (acknowledgement necessary to constitute valid deed). Rather, it is — as its name implies — a contract setting forth the preconditions necessary for Centel to obtain a license to attach its wires to DP&L's poles or bury them in DP&L's trenches. The only questions to be determined on remand are whether such a license was, in fact, given, and if so, what the terms of the license were, how long it was to run, and whether it was revocable.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing concurring opinion.