971 So.2d 712 (2007)
Ex parte LIGHTWAVE TECHNOLOGIES, L.L.C.
(In re Lindburgh Jackson and Kathy Matthews
v.
City of Auburn, Alabama Power Company, and Lightwave Technologies, L.L.C.).
1050996.
Supreme Court of Alabama.
April 27, 2007.
*713 Steven K. Herndon and Andrew W. Christman of Gidiere, Hinton, Herndon & Christman, Montgomery, for petitioner.
Robert D. Drummond, Jr., Fairhope, for respondents Lindburgh Jackson and Kathy Matthews.
James A. Byram, Jr., and Louis M. Calligas of Balch & Bingham, LLP, Montgomery; and Edward S. Allen and Ed R. Haden of Balch & Bingham, LLP, Birmingham, for respondent Alabama Power Company.
BOLIN, Justice.
Lightwave Technologies, L.L.C., petitioned this Court for a writ of certiorari to review the decision of the Court of Civil Appeals, in a plurality opinion, affirming the trial court's summary judgment in part, reversing it in part, and remanding the cause. Jackson v. City of Auburn, 971 So.2d 696 (Ala.Civ.App.2006) (opinion on application for rehearing). We granted the petition specifically to consider the Court of Civil Appeals' resolution of the issue whether, and to what extent, the holder of an easement obtained by prescription might "apportion" that easement for some additional use by another party.
Lindburgh Jackson owned property in Auburn, Alabama; Alabama Power Company (hereinafter "APCo") has maintained power lines across the property and a utility pole on the property. Over the years since he first obtained an interest in the property in 1978, Jackson occasionally complained of APCo's use and maintenance of the lines and the pole and threatened legal action against APCo. In October 1999, Jackson conveyed the property to his daughter, Kathy Matthews, although he continued to use the property for his business, and APCo's lines and pole remained on the property. Sometime between November 2000 and March 2001, Lightwave, pursuant to a "pole-sharing" agreement with APCo, installed fiber-optic cable on the utility pole on the property.[1] *714 The City of Auburn had authorized Lightwave to install its cable in Auburn and by ordinance had established the route for such placement.
In September 2003, Jackson sued various parties, including APCo, Lightwave, and the City of Auburn asserting, among other things, that APCo had conspired with Lightwave to commit trespass on the property. In 2004, Matthews was added as a plaintiff.[2] After considerable litigation, the trial court entered a summary judgment in favor of all the defendants. Jackson and Matthews appealed to this Court, which transferred the case to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala.Code 1975.
After resolving a number of issues not relevant to the present petition with respect to the City of Auburn, the Court of Civil Appeals engaged in a detailed analysis of the plaintiffs' claims against APCo and concluded that APCo, in light of undisputed evidence that it had maintained the power lines in opposition to Jackson's objections from April 1983 until September 2003, had obtained an easement by prescription over the property in question under the requirements for establishing such easements set out in Bull v. Salsman, 435 So.2d 27, 29 (Ala.1983). The Court of Civil Appeals affirmed the summary judgment for APCo with respect to the plaintiffs' trespass claim against it. The Court of Civil Appeals then addressed the trespass claim against Lightwave and the conspiracy-to-commit-trespass claim against both APCo and Lightwave. We conclude that the rationale in the plurality opinion of the Court of Civil Appeals in this regard was well reasoned and correct, and we adopt that court's analysis as set out below as the opinion of this Court:
"In order to determine whether the summary judgment in favor of Lightwave on the trespass and conspiracy claims against it and the summary judgment in favor of APCo on the conspiracy claim against it were proper . . ., we must . . . consider whether APCo has the right to apportion its prescriptive *715 easement and whether its apportionment to Lightwave was within the scope of the prescriptive easement. If APCo has the right to apportion the easement and the apportionment was within the scope of the easement, then Lightwave could not have committed a trespass and APCo and Lightwave could not have conspired to commit a trespass. If, however, APCo cannot apportion its prescriptive easement, or if the apportionment to Lightwave exceeds the scope of the easement, Lightwave's actions could amount to trespassing on the property and APCo could, depending on facts that would be developed on remand, be shown to have conspired with Lightwave to commit a trespass.
"Lightwave argues that the Alabama Supreme Court has already determined the issue of the apportionability of power-line easements in Cousins v. Alabama Power Co., 597 So.2d 683 (Ala. 1992). Jackson and Matthews, however, argue that Cousins is distinguishable in that it involved two express easements and an easement acquired by condemnation and not a prescriptive easement. Discussions of Cousins and of the law regarding both the apportionability of easements and the scope of prescriptive easements will be necessary to decide whether APCo has the right to apportion the prescriptive easement in the present case and whether the apportionment to Lightwave is within the scope of APCo's prescriptive easement.
"The term `apportionability' in reference to easements refers to the easement owner's right to divide the easement `to produce independent uses or operations.' See Restatement of Property § 493 cmt. a. (1944). In general, an exclusive easement in gross is apportionable to the extent the additional use is `authorized by the manner or terms of [the easement's] creation.' Id. at cmt. c. An easement in gross is an easement that `benefits a particular person or persons (or business or organization) whether or not they own another piece of land'; that is, the person or entity owning the easement is benefited personally rather than the benefit of the easement accruing to another piece of land. 7 Thompson on Real Property § 60.02(f)(2) (Thomas ed.1994); 4 Powell on Real Property § 34.02[2][d] (2000). `An exclusive easement grants unfettered rights to the owner of the easement to use the easement for purposes specified in the grant "to the exclusion of all others,"' including the servient owner. Thompson on Real Property, supra, § 60.04(b)(2). APCo's prescriptive easement in the present case is an exclusive easement in gross because it permits APCo to use the easement for the construction and maintenance of power lines and precludes, by its nature, Jackson and Matthews from using the easement for that purpose.
"Cousins involved whether APCo could apportion three exclusive easements in gross4two created by express grant and one created by condemnation. The express easements stated that APCo had the right to construct, operate, and maintain electric transmission lines and telegraph and telephone lines. Cousins, 597 So.2d at 686. The condemnation order granted APCo `"the right to construct and erect over said lands such tower, pole and wire lines, and all appliances necessary, convenient and useful in connection therewith. . . ."' Id. at 687. APCo desired to replace its existing ground wire cable across the easements at issue with a new ground wire cable containing some fiber-optic communication line. Id. at 685. A portion of the fiber-optic communication line was to be used for APCo's internal *716 communications network; however, APCo intended to share the other portion of the fiber-optic communication line with American Telephone and Telegraph Company (`AT & T'). Id.

"The servient owners conceded that APCo had the right to string the new ground wire cable containing the fiber-optic communication line because, in the case of the express easements, such lines were equivalent to telephone lines, which were expressly permitted by the easement, and in the case of the condemnation order, the communication line would be permitted under its language insofar as the line was used for communication in connection with the distribution of power to the public. Id. However, the servient owners objected to APCo's sharing its easements with AT & T without first obtaining the consent of or compensating the servient owners. Id. at 686. The trial court entered a summary judgment for APCo, stating that `"under the prevailing authorities and the facts of this case, [APCo] can lawfully share the use of its communication lines with another entity such as AT & T, regardless of whether its rights-of-way [were] obtained by deed or by condemnation proceedings."' Id.

"In deciding that the trial court had properly determined that APCo was entitled to judgment as a matter of law on the issue whether it had the right to apportion its easements, the Cousins court stated that `[m]any courts have found that utility companies are authorized to share or apportion their easement rights with a third party, without obtaining the permission of, or compensating the owner of, the servient estate.' Cousins, 597 So.2d at 687 (citing in a footnote Jolliff v. Hardin Cable Television Co., 26 Ohio St.2d 103, 269 N.E.2d 588 (1971); Hoffman v. Capitol Cablevision System, Inc., 52 A.D.2d 313, 383 N.Y.S.2d 674 (1976), app. den., 40 N.Y.2d 806, 390 N.Y.S.2d 1025, 359 N.E.2d 438 (1976); Faulkner v. Kingston Cablevision, Inc., 53 A.D.2d 948, 386 N.Y.S.2d 358 (1976), app. den., 40 N.Y.2d 805, 388 N.Y.S.2d 1025, 356 N.E.2d 1233 (1976); and Henley v. Continental Cablevision of St. Louis County, Inc., 692 S.W.2d 825 (Mo.Ct.App. 1985)). The Cousins court also commented that the language contained in the deeds and the condemnation order at issue in Cousins was similar to the language contained in easements in other cases in which courts had determined that the language indicated the grantor's intent to convey the right to apportion.5 Cousins, 597 So.2d at 687. The court further stated that `[a]n apportionment such as the one contemplated by APCo in this case has been held not to constitute an additional servitude.' Id. (citing Salvaty v. Falcon Cable Television, 165 Cal.App.3d 798, 212 Cal.Rptr. 31 (1985)).
"In deciding that the language of the easements and the condemnation order in question was sufficient to imply an intent to grant the right to apportion the easement to APCo, the Cousins court relied, in part, upon Centel Cable Television Co. of Ohio v. Cook, 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991). According to the `Syllabus by the Court' preceding the opinion in Cook, the servient owner in Cook had granted to the power company and `"its successors and assigns forever, a right of way and easement . . . for a line for the transmission and/or distribution of electric energy thereover, for any and all purposes for which electric energy is now, or may hereafter be used. . . ."' Cook, 58 Ohio St.3d at 8, 567 N.E.2d at 1011. The Cook court explained that
"`[where an easement in gross] is created by conveyance, apportionability *717 depends upon the intention of the parties to the conveyance.' . . . Jolliff v. Hardin Cable Television Co., [26 Ohio St.2d 103,] 107, 55 O.O.2d [203,] 205, 269 N.E.2d [588,] 590 [(1971)], citing 5 Restatement of the Law, Property (1944) 3053, Section 493, Comment b.

"Cook, 58 Ohio St.3d at 10, 567 N.E.2d at 1013 (footnotes omitted). Although the Cook court did not hold that the language in the easement was `sufficient to express the grantor's clear intent to grant [the power company] the right to apportion its easement,' 58 Ohio St.3d at 11, 567 N.E.2d at 1013-14, the court continued its analysis to determine the intent of the grantor, finally determining that the easement was intended to be apportionable. 58 Ohio St.3d at 11, 567 N.E.2d at 1014. The Cook court further determined that the intended use of the easement was similar to the use granted in the easement and that the apportionment of the easement would not place an additional burden on the servient tenement. 58 Ohio St.3d at 11-12, 567 N.E.2d at 1014-15.
"The Cook court relied upon an earlier Ohio case, Jolliff v. Hardin Cable Television Co., 26 Ohio St.2d 103, 107, 269 N.E.2d 588, 590 (1971), that relied, in part, on the Restatement of Property § 493 (1944), which explains that `[t]he apportionability of an easement in gross is determined by the manner or the terms of its creation.' As explained in the Restatement, the intent of the parties to an easement by conveyance controls whether an easement is apportionable. Restatement of Property § 493 cmt. b. (1944). However, `[w]hen an easement in gross is created by prescription, the question of its apportionability is decided in light of the reasonable expectation of the parties concerned in its creation as inferred from the nature of the use by which it was created.' Id.

"Thus, although Cousins does indeed hold that express easements and easements acquired by condemnation may be apportioned when the language in the document or condemnation order creating the easement indicates an intention to convey or to grant the right to apportion and when the apportionment does not constitute an additional servitude, it cannot stand for the proposition, as urged by Lightwave, that the prescriptive easement in this case is apportionable to Lightwave as a matter of law without further inquiry. In fact, although we agree that APCo's prescriptive easement may indeed be apportioned, the question that remainswhat rights APCo has to apportionis not decided by Cousins.

"The ground wire containing the fiber-optic communication line in Cousins was conceded to be within the scope of both the express easements and the easement by condemnation. Cousins, 597 So.2d at 685. The cable line at issue in the present case, however, has not been conceded to be within the scope of APCo's prescriptive easement. Lightwave's cable line is not contained within the replacement of a preexisting cable strung by APCo like the fiber-optic communication line was in Cousins. See id. As mentioned above, an exclusive easement in gross is generally considered to be apportionable to the extent the additional use is `authorized by the manner or terms of [the easement's] creation.' Restatement of Property § 493 cmt. c. (1944). We must therefore consider the parametersor the scopeof APCo's prescriptive easement.
"In Alabama, the scope of an easement established by prescription is determined by the extent of the use. Wright & Rice v. Moore, 38 Ala. 593, 598 *718 (1863); Roundtree v. Brantley, 34 Ala. 544, 552 (1859);6 see also 4 Powell on Real Property § 34.13 (2000) (`the scope of [a prescriptive] easement is necessarily a primary function of the continued use or uses by which it was generated'). In addition, our supreme court has recognized that `"it is elementary law respecting easements that neither the dominant owner nor the servient owner is permitted to materially alter the character of the servitude."' Blalock v. Conzelman, 751 So.2d 2, 6 (Ala.1999) (quoting Gerber v. Appel, 164 S.W.2d 225, 228 (Mo.Ct.App.1942), quashed in part on other grounds, State ex rel. Appel v. Hughes, 351 Mo. 488, 173 S.W.2d 45 (1943)). In Blalock, our supreme court reversed a trial court's judgment permitting an easement holder to prevent the servient owner from cutting trees and other vegetation from the easement in order to further the servient owner's use of the easement area. Blalock, 751 So.2d at 7. The court explained that the easement holder, by seeking permission to prevent the removal of the vegetation, was attempting to `change the essential character of the easement from that of a right of way, toin effectone of shade and air.' Id. at 6. The trial court's judgment restraining the servient owner from removing the trees and vegetation, said the court, was in error because it wrongfully allowed the easement holder to change the character of the easement.
"Under Alabama law as explained above, the scope of a prescriptive easement is determined by the scope of the use that established the prescriptive right, and an easement holder is not entitled to materially alter the scope (or character) of its easement. Lightwave contends that APCo's right to divide its easement does not arise from the source of APCo's right, be it by deed, prescription, or otherwise. That is indeed true; as also explained above, the right to apportion typically depends on the type of easement involved and the exclusivity of that easement. As also noted above, however, the Restatement differentiates between easements acquired by conveyance and those acquired by prescription in its discussion of the apportionability of easements. Restatement of Property § 493 cmt. b. (1944). Specifically, the Restatement indicates that exclusive easements in gross are apportionable to the extent the additional use is within the scope of the easement. Id. at cmt. c. Two reported decisions from other states have considered whether a power company can properly apportion its prescriptive easements to other companies, such as telephone or cable companies; these cases reached different results. See Ogg v. Mediacom, L.L.C., 142 S.W.3d 801 (Mo.Ct.App.2004); and Hise v. BARC Elec. Coop., 254 Va. 341, 492 S.E.2d 154 (1997).
"In Hise, the Virginia Supreme Court considered, among other things, whether the telephone lines and cable lines of third-party companies that had been strung on the power poles maintained by BARC Electric Cooperative (`BARC') in its prescriptive easement over the Hises' property could be moved to the new power poles constructed by BARC over another portion of the Hises' property acquired in an eminent-domain proceeding. Hise, 254 Va. at 344, 492 S.E.2d at 157. In deciding that the telephone and cable lines could be moved to the new poles, the court discussed the apportionability of prescriptive easements, noting that the Restatement concludes that the reasonable expectation of the parties should be considered. 254 Va. at 346, 492 S.E.2d at 158. The court pointed out that, during the prescriptive period, *719 BARC had permitted the telephone and cable companies to string their lines on its poles and that `[s]uch attachments had been made without objection from the Hises for more than 16 years before this controversy arose'; the court also noted that the Hises had used the cable line for television reception for 8 of those years. Id. Based on those facts, the court concluded that BARC had construed its easement to be both exclusive and apportionable and that the Hises had acquiesced in that construction by failing to object and in using the cable line. Id. Thus, the court concluded that the prescriptive easement was apportionable and that the telephone and cable wires could be properly affixed to the new poles. Id.

"In Ogg, however, the cable company fared far differently. The Oggs owned and lived on a family farm over which Platte Clay Electric Cooperative, Inc. (`Platte Clay Electric'), held a long-standing prescriptive easement upon which its poles and power lines were maintained at a height of approximately 18 to 20 feet above the ground. Ogg, 142 S.W.3d at 804-05. In early 1999, Mediacom placed fiber-optic cable at a height of approximately 12 to 14 feet above the ground7 on the poles under a pole-sharing agreement with Platte Clay Electric; Mediacom did not seek permission from, acquire an easement from, or compensate the Oggs for the use of the property. Id. The Oggs objected and sued Mediacom alleging trespass. Id. at 806. Among the Oggs' arguments was that even if Platte Clay Electric had granted Mediacom a license to use Platte Clay Electric's easement, the license was `unlawful in that it would create a right beyond the scope of the original easement.' Id. at 808.
"The trial court had entered a summary judgment in favor of Mediacom, holding that whether Mediacom could use the license granted by Platte Clay Electric `"turn[ed] entirely on whether the addition of Mediacom's cable to utility poles already containing an electric wire impose[d] an additional unreasonable burden."' Id. The Missouri Court of Appeals agreed with the Oggs that the trial court erred by focusing exclusively on the burden imposed by Mediacom's use of the easement, stating that `[w]hile "the owner of an easement may, in some circumstances, license or authorize third persons to use its right of way," the licensor "may not create a right in excess of [that] held by it, nor . . . a right which as against the owner of the servient estate is an additional burden or servitude upon the fee simple title."' Id. (quoting Eureka Real Estate & Inv. Co. v. Southern Real Estate & Fin. Co., 355 Mo. 1199, 1206, 200 S.W.2d 328, 332 (1947))(footnote omitted). The Missouri court explained that `the licensing agreement between Platte Clay Electric and Mediacom could, at most, lawfully confer on Mediacom only the rights Platte Clay Electric itself held under its prescriptive easement.' Id. at 808-09 (footnote omitted).
"The Missouri court stated that, under Missouri law, the rights of the holder of a prescriptive easement are `defined solely by the character and extent of the use made thereof during the prescriptive period.' Id. at 809 (quoting Stickle v. Link, 511 S.W.2d 848, 854 (Mo.1974)) (footnote omitted). As the court further explained, `"[Prescriptive] easements arise by reason of use. It is rational that an easement that exists because of use, which falls short of possession, may not be extended in its character and extent beyond the use which existed when the prescription arose."' Id. (quoting 18 Theodore H. Hellmuth, Missouri *720 Practice: Real Estate Law Transactions § 420, at 430 (2d ed.1998)). Based on those legal principles, the Missouri court determined that neither Platte Clay Electric nor Mediacom `had the legal right to unilaterally expand, in character or extent, the prior prescriptive use,' which, according to the court was `to operate and maintain electrical power cables on poles at a height of approximately eighteen to twenty feet.' Id. at 810.
"The present case is much more akin to Ogg than to Hise. Certainly, Jackson and Matthews allowed APCo to gain a prescriptive easement over the disputed property. However, although Lightwave may have affixed its line to the power pole nearly 3 years before Jackson filed this action, one can hardly conclude that a relatively short 3-year delay amounts to the clear acquiescence apparent in a delay of 16 years like that in Hise.

"Lightwave argues, like Mediacom did in Ogg, that it is entitled to share APCo's existing prescriptive easement. Like Missouri law, Alabama law bases the scope of a prescriptive easement on the extent of the use that established the prescriptive right. Alabama law also prohibits an easement holder from changing the character of the easement. Therefore, although we agree with Lightwave that prescriptive, exclusive easements in gross like APCo's are apportionable, we, like the court in Ogg, must conclude that only those rights acquired by APCo may be apportioned.
"APCo acquired the right to string power lines across the disputed property. APCo did not acquire a right to string any line or cable providing something other than, or related to, electrical power over the easement. The trial court's summary-judgment order does not specify the parameters of APCo's prescriptive easement; however, based on the arguments presented to the trial court and its decision to enter a summary judgment in favor of Lightwave, we conclude that the trial court determined, based on Cousins, that APCo's prescriptive easement could be apportioned as a matter of law with Lightwave. As explained above, Cousins does not stand for the proposition that a prescriptive easement is absolutely apportionable without limitation. Thus, the trial court's conclusion that Lightwave, by virtue of APCo's right to apportion its prescriptive easement, acquired the right to string its cable on APCo's pole is incorrect, and the summary judgment on that issue was improperly entered. Withers v. Mobile Gas Serv. Corp., 567 So.2d 253, 256-57 (Ala.1990) (reversing a summary judgment on, among other things, a trespass claim in favor of the gas company where the gas company used land outside the temporary 20-foot easement to which it was entitled).
"At this point we must discuss the defense of laches, asserted both by APCo and Lightwave as an independent ground upon which to affirm the summary judgment in their favor. `To establish the application of the doctrine of laches, [a defendant] ha[s] to show that [the plaintiff] delayed in asserting his right or claim, that his delay was unexcusable, and that his delay caused the [defendant] undue prejudice.' Ex parte Grubbs, 542 So.2d 927, 929 (Ala.1989). `For the doctrine of laches to bar a claim it must be said that "from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice."' Salter *721 v. Hamiter, 887 So.2d 230, 241 (Ala. 2004) (quoting Ussery v. Darrow, 238 Ala. 67, 71, 188 So. 885, 888 (1939)).
"Because we have determined that APCo established a prescriptive easement, we need not consider whether the defense of laches is applicable to the trespass claim against it. In its summary-judgment motion, Lightwave incorporated APCo's summary-judgment argument concerning the 20-plus-year delay between Jackson's knowledge of the power pole and lines on the disputed property and the institution of this action; Lightwave made no separate argument of its own. Lightwave's first trespass on the disputed property would have been, at the earliest, in November 2000, only three years before the institution of this action. Therefore, we can safely determine that Lightwave did not establish how the shorter, three-year delay between its stringing its cable in 2000 or 2001 and [the filing of the complaint and the amended complaint] in 2003 and 2004 prejudiced it in any manner or made it `difficult if not impossible to do justice.' Accordingly, laches is not an alternate ground upon which to affirm the summary judgment in favor of Lightwave on the trespass claim. Likewise, any conspiracy claim based on APCo's and Lightwave's conduct in regard to the fiber-optic cable must have arisen approximately three years before the institution of this action, and neither APCo nor Lightwave argued or presented evidence negating any issue of fact concerning whether the three-year delay caused either defendant any prejudice; thus, laches is not an appropriate alternative ground for affirmance of the summary judgment on the conspiracy claims against Lightwave and APCo.
"Because APCo's prescriptive easement is limited in scope to the extent of the use that created it, APCo's apportionment of the prescriptive easement does not serve to insulate APCo from the conspiracy claim against it. Nor does APCo's attempt to apportion its prescriptive easement insulate Lightwave from either the trespass claim or the conspiracy claim against Lightwave. . . .
"4 Although the Cousins court did not define the easements as being exclusive or in gross, they clearly were.
"5 The other cases cited in Cousins also involved express easements.
"6 While Lightwave argues in its brief that these cases have no bearing on the present case because of their precise holdings relating to the prescriptive easements sought in each case, the principle for which the cases were cited by Jackson and Matthewsthat prescriptive easements are limited to the extent of the use that established themis indeed relevant to a determination of whether APCo's prescriptive easement may be apportioned in the manner APCo and Lightwave intended it to be in the present case.
"7 Mediacom also installed underground fiber-optic cable on a portion of the Oggs' property; the portion of Ogg involving the underground cable is not pertinent to the resolution of this appeal and will not be discussed."
971 So.2d at 709.
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
SEE, LYONS, STUART, SMITH, and PARKER, JJ., concur.
COBB, C.J., and Murdock, J., recuse themselves.
NOTES
[1] In response to Lightwave's petition and after we had issued the writ of certiorari, APCo submitted a brief in which it argued that we should quash the writ of certiorari and not consider the apportionment issue. APCo argues that, because Lightwave agreed in the pole-sharing agreement to secure from the landowner its own right to use the subject property, APCo "did not authorize Lightwave to use its rights and did not apportion its easement rights to Lightwave. . . ." (APCo's brief, p. 8.) Lightwave argues that APCo initially advised the Court of Civil Appeals that Lightwave could share APCo's rights. Thereafter, according to Lightwave, APCo first modified its position on that issue in its application for rehearing to that court when APCo stated: "It is not appropriate for APCo to take a position on whether Lightwave's telecommunications use is within the scope of APCo's [pole-sharing] agreement. . . ." (APCo's application for rehearing, p. 23 n. 5.) We reject APCo's invitation to quash the writ. For the purposes of this proceeding, we address the apportionment issue as framed by Lightwave because APCo did not question the appropriateness of apportionment under its agreement with Lightwave until APCo filed its application for rehearing in the Court of Civil Appeals. See Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (opinion on application for rehearing) (well-settled rule of appellate procedure precludes consideration of arguments made for the first time on rehearing).
[2] In an amended answer to Jackson's original complaint, in which Jackson identified himself as the owner of the property, Lightwave asserted that Jackson lacked standing. Jackson subsequently filed an amended complaint adding Matthews as a plaintiff and stating that the "plaintiffs were and are the owners and/or had or have possessory control of the real property." Whether Jackson had standing to file this action as having "possessory control" of the property in question is not an issue on appeal, and no one questioned Matthews's standing as owner of the property, even though she was not an original plaintiff.